**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

RAYSHAUN BUGG,
     Plaintiff,

     v.

ANGEL QUIROS, *et al.*,
     Defendants.

No. 3:26-cv-996 (SRU)

## <u>INITIAL REVIEW ORDER</u>

*Pro se* plaintiff Rayshaun Bugg ("Bugg") is currently in Connecticut Department of Correction ("DOC") custody[1] at Osborn Correctional Institution ("Osborn CI").  Bugg brings an Eighth Amendment deliberate indifference claim against DOC Commissioner Angel Quiros, Warden Robert Martin, DOC Health Services Chief Operating Officer ("COO") Richard Richeson, APRN Cheryl Spano Lonis, and "John/Jane Does 1-10" (collectively, the "Defendants") in their individual and official capacities.  *See* Doc. No. 1 at 1.

For the following reasons, Bugg's complaint is **dismissed without prejudice**.

## I.    FACTUAL BACKGROUND

Below is a summary of the basic factual allegations in Bugg's complaint.

On or about July 20, 2025, Bugg sustained "a serious knee injury while playing basketball in G-Gym at Osborn" because the basketball court was wet and slippery.  *See* Doc. No. 1 at 3.  Bugg was transported by wheelchair to the medical unit and medical personnel evaluated him.  *Id.*  Although he could not bear weight on his injured leg, medical staff

---

[1] *See* Conn. Dep't of Corr., Inmate Locator ("DOC Inmate locator"), https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=348423 (last accessed Aug. 5, 2026).  I take judicial notice of that public record.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, 2023 WL 1818545, at *2 n.1 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

concluded his knee was not broken and informed Bugg "there was little they could do." *Id.* He was given a bandage and ibuprofen and "forced to walk back to his housing unit." *Id.*

In the days following the injury, Bugg "experienced severe and persistent pain, swelling, instability, and loss of mobility." *Id.* Bugg "repeatedly informed correctional officers and medical personnel that he could not properly walk and that his condition was worsening." *Id.* He was eventually given a knee brace and crutches, but he was not provided with diagnostic testing or a specialist evaluation. *Id.* at 4.

Bugg filed a health service administrative remedy form on August 11, 2025. *Id.* However, Bugg reports that the response stated that "his request did not meet procedural requirements" and that the rejection of his request "prevented meaningful review of his urgent medical concerns." *Id.* "On September 23, 2025, a community advocate contacted the Office of the Correctional Ombudsman regarding [Bugg's] injury" and lack of adequate treatment. *Id.* Soon after, Bugg was scheduled for an MRI, prescribed medication, provided with a knee brace and crutches, and referred for an orthopedic consultation. *Id.* The MRI confirmed "multiple ligament injuries" and that Bugg required "intensive physical therapy" before surgery. *Id.*

The delay in Bugg's medical care continued following his MRI and his January 2, 2026 health services visit. *Id.* at 4-5. Despite being referred for additional physical therapy, "no [physical therapy] referral was placed on the OSS list until March 9, 2026." *Id.* at 5. He states that the "prolonged delay" caused overcompensation injuries in his uninjured leg and "additional deterioration." *Id.* Bugg finally received surgery "on or about April 6, 2026." *Id.* After surgery, Bugg alleges that he "received only physical therapy" despite requiring "ongoing rehabilitative treatment." *Id.*

Bugg alleges that the Defendants knew he "faced a substantial risk of serious harm from [his] untreated ligament and meniscus injuries[] yet failed to provide timely and adequate medical care." *Id.* He brings one count of deliberate indifference to serious medical needs, which resulted in his "prolonged suffering, deterioration of his condition, unnecessary pain, and lasting injury." *Id.* at 5-6. Bugg seeks monetary damages and declaratory relief. *Id*. at 6.

## II.    STANDARD OF REVIEW

Under section 1915A of Title 28 of the United States Code, I must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). I then must "dismiss the complaint, or any portion of the complaint," if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). Dismissal under this provision may be with or without prejudice. *See Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004).

In reviewing complaints under section 1915A, I must construe them "liberally and interpret[] [them] to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A civil complaint must include sufficient facts to afford defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Further, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Conclusory allegations are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

### III.    DISCUSSION

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments."  U.S. Const. amend. VIII; *Robinson v. California*, 370 U.S. 660, 666-67 (1962).  The ban on cruel and unusual punishment "does not mandate comfortable prisons, . . . but neither does it permit inhumane ones."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted).  An Eighth Amendment claim related to the conditions of an inmate's confinement, often referred to as a "deliberate indifference" claim, is comprised of objective and subjective elements.  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  Objectively, an inmate must be deprived of a "basic human need[]," or be subjected to a "substantial risk of serious harm" to health or safety.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Farmer*, 511 U.S. at 834.  Subjectively, a prison official must "know[] of and disregard[] an excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 837.

"To seek damages from a defendant on a deliberate indifference to serious medical needs claim, [a plaintiff] must show the defendant's 'personal involvement' in the alleged constitutional violation."  *Jordan v. Gallagher*, 2026 WL 1846607, at *11 (D. Conn. June 26, 2026) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  "Personal involvement means direct participation, such as 'personal participation by one who has knowledge of the facts that rendered the conduct illegal,' or indirect participation, such as 'ordering or helping others to do the unlawful acts.'"  *Roseboro v. Faucher*, 2024 WL 5111860, at *5 (D. Conn. Dec. 13, 2024) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)).  This is true with supervisory officials, as well.  *See Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (holding that a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" to

4

hold a state official liable for damages under section 1983). Thus, "a defendant in a [section] 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

"As a corollary of the personal involvement requirement, complaints that rely on group pleading and fail to differentiate . . . which defendant was involved in the alleged unlawful conduct are insufficient to state a claim." *Gonzalez v. Yepes*, 2019 WL 2603533, at *7 (D. Conn. June 25, 2019) (internal quotation marks and citation omitted). "If a plaintiff's rights have been violated by a person whose name the plaintiff does not know, then a plaintiff may name that person as a 'John Doe' defendant." *Thompson v. Michaud*, 2019 WL 6879046, at *2 n.1 (D. Conn. Dec. 17, 2019). However, "a plaintiff still must establish each Doe defendant's personal involvement in the alleged constitutional deprivation." *Torres v. Connection, Inc.*, 2023 WL 2477502, at *3 (D. Conn. Mar. 13, 2023).

Bugg lists DOC Commissioner Angel Quiros, Warden Robert Martin, DOC Health Services COO Richard Richeson, APRN Cheryl Spano Lonis, and "John/Jane Does 1-10" as defendants in his complaint. *See* Doc. No. 1 at 1-3. However, Bugg does not describe in the body of his complaint how any of these defendants directly or indirectly participated in allegedly violating Bugg's constitutional rights. *See Roseboro*, 2024 WL 5111860, at *5 (noting personal involvement means either direct or indirect participation); Doc. No. 1. Instead, Bugg uses terms like "Defendants," "medical staff," and "correctional officers" throughout his complaint, without differentiating which defendants, medical staff members, or correctional officers allegedly engaged in the acts that violated his constitutional rights. *See*, *e.g.*, Doc. No. 1 at 3, 5, 6. Failure to describe the individual actions or inactions of each defendant in the body of the complaint, even if the identities of those defendants are presently unknown, warrants dismissal of Bugg's

claims for damages for lack of personal involvement.  *See*, *e.g.*, *Vanterpool v. Harris*, 2020 WL 13017257, at *3 (D. Conn. Sept. 4, 2020) (dismissing claims against defendants who were listed "in the caption and description of the named defendants" because plaintiff "d[id] not describe their conduct or assert allegations against them in the body of the complaint."); *Torres v. Off. of Adult Prob.*, 2023 WL 319233, at *5 (D. Conn. Jan. 19, 2023) (dismissing claims against defendants "John Does 1-25" because "[t]he allegations of the Second Amended Complaint largely refer to 'Defendants' and fail to specifically identify which defendant participated in the alleged constitutional violation.").

Bugg also "seeks a declaration that Defendants['] conduct constituted deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment[]."  Doc. No. 1 at 6.  If Bugg "were to prevail on any constitutional claim proceeding in this action, a judgment in his favor would serve the same purpose as a declaration that Defendants violated his constitutional rights."  *Petion v. Pearson*, 2023 WL 6050054, at *4 (D. Conn. Sept. 15, 2023). Accordingly, Bugg's request for declaratory relief is dismissed.  *See Pennyman v. Caruso*, 2026 WL 1786429, at *4 (D. Conn. June 22, 2026) (citing *Petion* to conclude that "dismissal of Plaintiff's declaratory judgment request is warranted because the declaratory relief he seeks is duplicative of his other causes of action.").

## IV.    CONCLUSION

For the reasons stated above, Bugg's complaint is **dismissed without prejudice**.  Bugg may file an amended complaint within **30 days** of this order.

Any amended complaint will completely replace the original complaint, and the Court will not consider any allegations in the original complaint in conducting its initial review of the amended complaint under 28 U.S.C. § 1915A(a).  Any amended complaint, if filed, must allege

the personal involvement of each person named as a defendant, bearing in mind that supervisory defendants cannot be considered personally involved in a constitutional violation by virtue of their position of authority alone. *See Black*, 76 F.3d at 74. Failure to file an amended complaint by this deadline will result in the Court closing this case.

So ordered.

Dated at Bridgeport, Connecticut, this 5th day of August 2026.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge